UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARRIUS MOLSON,

Petitioner,

-vs-

STEVE WENDERLICH,

Respondent.

**No. 6:13-CV-06674 (MAT)**
**DECISION AND ORDER**

## I. Introduction

Darrius Molson ("petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated pursuant to a judgment entered on June 29, 2010, in Niagara County Court (Murphy, J.), following a jury verdict convicting him of murder in the second degree (N.Y. Penal Law §§ 125.25(1)) and criminal possession of a weapon in the second degree (N.Y. Penal Law §§ 265.03(3)).

## II. Factual Background and Procedural History

By indictment number 2009-303, a Niagara County grand jury charged petitioner with one count of murder in the second degree and one count of criminal possession of a weapon in the second degree. The charges arose from an incident in which petitioner and an accomplice, Phillip Holloway, shot Deion Woods six times, killing him. At trial, eyewitness Bernadette Bishop testified that in the early morning of June 13, 2009, she was sitting on Woods' front porch with him when she saw a man, who she identified as petitioner, approach the house holding a handgun. Bishop ran inside

the house and heard multiple gunshots. She then ran outside and called 911 at Woods' direction. Woods later died from the gunshot wounds. Testimony from additional witnesses corroborated Bishop's account, and petitioner made a statement to police days after the incident to the effect that he had "just committed murder." Doc. 11-2 at 111.

The jury convicted petitioner as charged. On June 19, 2010, Judge Matthew J. Murphy, III sentenced petitioner to an indeterminate sentence of 22 years to life on the murder count and five years determinate plus five years post-release supervision on the criminal possession of a weapon count, both sentences to run concurrently.

Petitioner filed a counseled direct appeal to the New York State Supreme Court, Appellate Division, Fourth Department. The Fourth Department unanimously affirmed the conviction, and the New York State Court of Appeals denied leave to appeal. See People v. Molson, 89 A.D.3d 1539 (4th Dep't 2011), lv denied 18 N.Y.3d 960 (2012).

This habeas petition followed, in which petitioner contends that (1) a photo array used to identify him should have been suppressed as unduly suggestive; (2) the Fourth Department erroneously determined that the admission of double hearsay was harmless error; and (3) the evidence was legally insufficient to establish that petitioner aided in the commission of the crime.

Respondent contends that the petition is untimely. For the reasons discussed below, the Court agrees, and therefore will not address the merits.

**III. Timeliness**

AEDPA requires that a federal habeas corpus petition be filed within one year of the date on which the petitioner's state court conviction becomes final. 28 U.S.C. § 2241(d)(1). A habeas petitioner's conviction generally becomes final for AEDPA purposes upon, "either the completion of certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). In this case, the Court of Appeals denied leave to appeal on March 8, 2012. See Molson, 18 N.Y.3d at 960. Petitioner's state court conviction became final on June 6, 2012, 90 days after his leave application was denied. The statute of limitations on filing a petition thus expired on June 6, 2013. Petitioner did not file his petition until 193 days later, on December 16, 2013.

On January 9, 2014, this Court ordered petitioner to complete a § 2254 Timeliness Response Form. Doc. 2. The order also directed petitioner to "provide the Court with any other information which may be relevant to the Court's determination of the statute of limitations issue." Id. Petitioner's response contends that his petition should be deemed timely because he was housed in the

special housing unit ("SHU"), in which he had "[i]nadequate access to legal materials, . . . no use of phones or computers," and was "[n]ot permitted to hold legal law books for more than just a few hours per week." Doc. 3 at 1. Petitioner also contends that he was never notified by his appellate attorney that the Court of Appeals had denied leave in his case.

To qualify for equitable tolling of the limitations period, petitioner "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)).

Respondent points out that petitioner was not housed in the SHU during the time period from March 6 through November 28, 2012. See doc. 9 at 5-6. Thus, for the majority of the one-year limitations period, the conditions petitioner alleges prevented him from filing the petition did not in fact exist. The Court also notes that, even if these conditions did exist for some period of time, petitioner has not shown any causal connection between his confinement in SHU and his filing of a late habeas petition. See Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (declining to decide issue, but noting agreement with district court that causal connection was not shown between confinement in SHU and late filing of petition); Jones v. Artus, 615 F. Supp. 2d

77, 84 (W.D.N.Y. 2009) (petitioner who had been housed in SHU during part of limitations period failed to meet "burden of showing that 'but for' any of the [conditions related to SHU housing] he would have been able to file his petition within the one-year limitations period") (internal citations omitted).

Moreover, although petitioner asserts that his appellate attorney never notified him that leave had been denied in his case and states that he can prove as much through a FOIL request, he includes no such supporting facts in his paperwork and he does not state when, or how, he learned that leave had been denied in his case. See, e.g., Sumpter v. Sears, 2011 WL 31188, *5 (E.D.N.Y. Jan. 5, 2011) (rejecting claim for equitable tolling, noting that petitioner failed to allege "how or when he learned that his application for leave to appeal . . . was denied"). Under these circumstances, petitioner has not established that he is entitled to equitable tolling. See, e.g., id. ("[E]ven if his appellate counsel had failed to notify him that the New York Court of Appeals had denied leave to hear his appeal, that error would not support equitable tolling") (citing McCowen v. Conway, 2008 WL 123940, *4 (E.D.N.Y. Jan. 10, 2008) ("[T]he record petitioner has adduced fails even to establish that attorney or official negligence was responsible for the lapse in receipt of notice, much less that the delay was caused by the type of serious misfeasance that has been held to establish this element[.]")); Marengo v. Conway, 342 F.

Supp. 2d 222, 230-31 (S.D.N.Y. 2004) (rejecting claim for equitable tolling where petitioner alleged he did not receive notice but failed to establish that such lack of notice was an "extraordinary circumstance" under relevant precedent and did not establish due diligence; collecting cases). Accordingly, the Court finds that the petition is untimely and that petitioner is not entitled to equitable tolling.

**IV. Conclusion**

For the foregoing reasons, the petition (Doc. 1) is dismissed as untimely. A certificate of appealability shall not issue because petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Lucidore v. New York State Div. of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000). The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: November 9, 2015
Rochester, New York.